```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                  CORPUS CHRISTI DIVISION
```

| | |
|---|---|
| E.S. BNF R.S. and S.S., § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | C.A. NO. C-06-360 |
| § | |
| SKIDMORE TYNAN INDEPENDENT § | |
| SCHOOL DISTRICT, § | |
| § | |
| Defendant. § | |
| § | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On this day came on to be considered Defendant Skidmore Tynan Independent School District's Motion for Summary Judgment in the above-styled action. (D.E. 19.) For the reasons discussed below, Defendant's motion is GRANTED.

## I.  JURISDICTION

This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3).

## II. BACKGROUND

On August 17, 2006, Plaintiffs R.S. and S.S. (collectively, "Plaintiffs") filed suit against the Skidmore Tynan Independent School District ("Defendant") on behalf of their minor child, E.S.. (D.E. 1.) In their Complaint, Plaintiffs alleged that they prevailed in an administrative "due process hearing" against the Defendant and that, as prevailing parties, they are entitled to recover their attorney's fees pursuant to 20 U.S.C. § 1415(i).

-1-

(Pl.'s Orig. Compl. at §§ I-VII.)  On September 6, 2006, Defendant filed an Answer (D.E. 6) denying that Plaintiffs were prevailing parties in the administrative hearing, and denying that Plaintiffs are entitled to recover attorney's fees.  (Def.'s Answer at 4-5.) On December 1, 2006, Defendant filed a "Motion for Summary Judgment and Brief in Support" on Plaintiffs' claim for attorney's fees. (D.E. 19.)  On December 11, 2006, Plaintiffs filed a Response in opposition to Defendant's motion for summary judgment.  (D.E. 20.) The following facts are not in dispute:

At all times relevant herein, E.S. was a student with a disability residing within the Skidmore Tynan Independent School District and attending classes at the Skidmore Tynan Elementary School. (Def.'s Answer ("DA") at ¶ 1; Def.'s Ex. ("DEX") 2 at 2.) On October 31, 2005, Plaintiffs filed a "Request for Special Education Due Process Hearing" (the "Request for Hearing") against the Defendant under the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400-1485.  (DEX 1, 2 at 1; DA at ¶ 6.)  In the Request for Hearing, Plaintiffs alleged that Defendant had denied E.S. a "free appropriate public education" by failing:

  A. To provide an appropriate evaluation for a learning disability, inclusion and the need for a designated aide and speech; and has failed to timely evaluate for physical and occupational therapy.
  B. To provide appropriate support services such as a designated aide, an incline chair, physical, occupational and speech therapy and a remedial reading program.
  C. To provide Free Appropriate Education; [E.S.] is allergic to latex, and Respondent continues to use latex gloves when providing health services for

[E.S.]. (DEX 1 at 1.)  On February 6, 2006, Plaintiffs amended their Request for Hearing to add a new issue: "[w]hether the provision of diapers [or pull-ups] should be a supplementary aid as set out in the Individuals with Disabilities Education Act."  (DEX 6 at 1.)

The due process hearing began before an administrative hearing officer on May 30, 2006, and concluded on May 31, 2006.  (DA at ¶ 7; DEX 2 at 1-2.)  On June 30, 2006, the administrative hearing officer issued a written decision based on the evidence presented at the due process hearing.  (DEX 2.)  In the written decision, the hearing officer found, among other things, that: (1) there was "no evidence that [E.S.] should be evaluated for a learning disability;" (2) the Defendant "is not required to provide [diapers or] pull-ups to [E.S.] or reimburse [Plaintiffs] for the pull-ups [E.S.] uses while at school;" and (3) Defendant had ceased to use latex around E.S. after being informed of his allergy.[1]  (See DEX 2 at 3-5.)  Accordingly, the hearing officer concluded that the Defendant's education program for E.S. was appropriate in all those respects.  (See DEX 2 at 5.)

The hearing officer spent a significant portion of the written decision, however, discussing the Plaintiffs' claim that Defendant should provide E.S. with a single "designated aide" to help him

---

[1] The hearing officer also found that Plaintiffs had "withdr[awn] the issues concerning physical therapy and occupational therapy."  (DEX 2 at 2.)

with issues related to toileting. (See DEX 2 at 4-5.) The hearing officer noted that E.S. suffers from Spina Bifida and, as a result, he is incontinent and has no sensation over his bladder or bowels. (DEX 2 at 2.) Accordingly, E.S. wears diapers (or "pull-ups")[2] instead of regular undergarments. (DEX 2 at 3.) After conversations with the Plaintiffs early in the school year, the Defendant had adopted a practice of changing E.S.'s pull-ups on an hourly basis during the school day. (DEX 2 at 3.) Under this hourly schedule, three "paraprofessionals" attended to E.S.'s toileting needs and changed his pull-ups. (DEX 2 at 3.) As the hearing officer noted, when the paraprofessionals checked E.S.'s pull-ups, there was no discernible pattern:

> . . . for the most part, [E.S.] was changed every hour on the hour. There were times when [E.S.] was dry and did not need to be changed at all. There were times that the pull-up was both wet and soiled, and needed to be changed. There is no way to determine how long [E.S.] may have been wearing either a soiled or wet pull-up.

(DEX 2 at 4.)

At some point, the Plaintiffs claimed that E.S. required a single designated aide to address his toileting needs, rather than hourly changes by the paraprofessionals. In the written decision, the hearing officer discussed the issue of E.S.'s toileting needs

---

[2] The hearing officer used both the term "diapers" and the term "pull-ups" to describe the undergarments that E.S. wears because of his incontinence and lack of bladder control. (See DEX 2 at 2-6, DEX 6 at 1.) This Court will use the term "pull-ups," however, because that is the term most frequently employed by the hearing officer and the parties.

and the Plaintiffs' claim that he required a designated aide:

> Here is the dilemma: How do you check in a way that is not embarrassing or get a seven-year-old child to report that he needs to be changed, particularly if the child has no sensation and is unable to tell you? How is the hygiene balanced with learning? At what point does the child's personal environment become unsanitary or unsafe or uncomfortable?
>
> [Plaintiffs] make[] a compelling argument that no one should have to sit in a soiled diaper for an hour. However, the proposed relief of a designated aide fails to provide a satisfactory solution. [E.S.] already has what amounts to a single designated person addressing his toileting needs for most of the day.

(DEX 2 at 4.) Ultimately, the hearing officer concluded that the Defendant's "hourly schedule of changing [E.S.'s] pull-ups allowed him to remain in wet or soiled pull-ups for an inappropriate length of time, thereby depriving him of a free appropriate public education." (DEX 2 at 5.) Nevertheless, the hearing officer also concluded that "the evidence does not support the need for a designated aide." (DEX 2 at 5.) Instead, the hearing officer ordered that the Defendant's schedule for changing E.S. "should be cut in half" and that Defendant should develop a "schedule that incorporates checking to see whether [E.S.'s] pull-ups need to be changed every half-hour" instead of every hour. (DEX 2 at 5-6.)

Neither the Plaintiffs nor the Defendant appealed the decision of the administrative hearing officer. The Plaintiffs, however, filed this present action, claiming that they "prevailed" when the hearing officer ordered Defendant to change E.S.'s pull-ups every half-hour instead of every hour.

**III. DISCUSSION**

    **A.**    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of [the record] which [it] believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant

"may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that the nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue). The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995). Similarly, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the [fact-finder] could reasonably find for [that party]." Anderson, 477 U.S. at 252.

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the

evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. Sch. Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996). If, however, the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

**B.    Prevailing Party Status**

Defendant claims that it is entitled to summary judgment because Plaintiffs were not "prevailing parties" under 20 U.S.C. § 1415(i) and therefore cannot recover attorney's fees. "Congress intended to permit the award of counsel fees only when a party has prevailed on the merits. Therefore, in order to qualify for attorney's fees . . . a plaintiff must be a 'prevailing party.'" Farrar v. Hobby, 506 U.S. 103, 109 (1992); see also 20 U.S.C. § 1415(i)(3)(B)(i) (a court may award reasonable attorney's fees "to a prevailing party who is the parent of a child with a disability"). Courts have a "generous formulation" of the term prevailing party, under which "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves *some of the benefit the parties sought in bringing suit.*'" Id. (emphasis supplied); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Jason D.W. by Douglas W. v. Houston Independent School Dist., 158 F.3d 205, 209 (5th Cir. 1998). Plaintiffs contend that they "prevailed"

in this case when the hearing officer ordered the Defendant to change E.S.'s pull-ups every half-hour instead of every hour. Defendant admits that the hearing officer ordered it to use a more rigorous changing schedule for E.S., and help E.S. recognize when he needs to be changed, but Defendant argues that "[t]hese were not issues in the case."  (See Def.'s Mot. Summ. Judg. ("MSJ") at 4.) Rather, the Defendant claims that "the issue on which [the Plaintiffs] arguably prevailed was not actually an issue identified for the due process hearing" and, therefore, Plaintiffs "request for attorney's fees should be denied."  (MSJ at 5.)

The Fifth Circuit addressed a similar argument in Foreman v. Dallas County, 193 F.3d 314 (5th Cir. 1999).[3]  In Foreman, the plaintiffs were precinct election judges who lost their positions when one of the defendants, Dallas County, adopted a new method of appointing precinct election judges.  Id. at 316.  The plaintiffs

---

[3] Foreman differs from the present case in that it did not involve a claim for attorney's fees under the IDEA, 20 U.S.C. § 1415.  The Fifth Circuit has held, however, that the "legislative history of the statute directs that the term 'prevailing party' in [§ 1415] has the same meaning as similar terms in other federal legislation." Angela L. v. Pasadena Independent School Dist., 918 F.2d 1188, 1193 (5th Cir. 1990); T.D. v. LaGrange School Dist. No. 102, 349 F.3d 469, 476 (7th Cir. 2003) ("As both the Second and Third Circuits have recognized . . . Congress did not intend the IDEA to be interpreted any differently from other prevailing party fee-shifting statutes"); John T. ex rel. Paul T. v. Delaware County Intermediate Unit, 318 F.3d 545, 557 (3d Cir. 2003) ("the IDEA's legislative history shows that Congress intended that courts interpret the term 'prevailing party' consistently with other fee-shifting statutes").  Therefore, Foreman provides guidance as to the meaning of the term "prevailing party" in the present case.

sued Dallas County and others, claiming that the defendants had not "precleared" the new appointment method with the United States Department of Justice as required by statute. Id. During the pendency of the litigation, the Texas legislature eventually enacted another new and different appointment method for election judges and precleared that method with the Department of Justice. Id. at 316, 318. All six plaintiffs were subsequently reappointed to their positions as presiding election judges. Id. at 318 n. 3. Following the adoption of the new appointment method, a three-judge panel dismissed the plaintiffs' claims as moot, but left open the question of attorney's fees. Id. at 318. Upon a motion, the district court found that plaintiffs were prevailing parties and awarded them attorney's fees. Id. The defendants appealed arguing, among other things, that "the plaintiffs [did] not qualify as prevailing parties because they failed to obtain the relief sought in their suit." Id. at 321.

    The Fifth Circuit agreed with the defendants, noting that the plaintiffs had originally filed suit seeking four types of relief: "(1) a declaration from the district court that the [appointment procedure] was legally unenforceable; (2) a temporary and permanent injunction against the defendants' use of any procedure that had not been precleared; (3) a declaration from the district court ordering the defendants to preclear the procedure; and (4) a declaration from the district court ordering that the 1996 election be conducted using a legally enforceable procedure". Id. at 321.

The plaintiffs, however, obtained none of this substantive relief. Id. Instead, the plaintiffs "obtained" a newly-enacted appointment method. Id. The Fifth Circuit found this insufficient to support an award of attorney's fees, explaining:

> The plaintiffs, however, would have us believe that they successfully obtained relief in the form of the newly-enacted gubernatorial method. They would point to the fact that under that new method they were reappointed to their old positions. Though carrying some initial appeal, their argument fails under close scrutiny. . . . It may be true that the plaintiffs filed this action with the goal of pressuring the defendants into adopting a different procedure. But hidden motives are not the stuff on which attorney's fees are based. *A defendant cannot be asked to pay attorney's fees for relief which was never demanded, or even made clear, in the plaintiff's complaint.* . . . We conclude that the district court clearly erred in finding that the plaintiffs were successful in obtaining the relief sought by filing this action.

Id. (emphasis supplied). Therefore, the Foreman court held that the plaintiffs were not prevailing parties, and were not entitled to collect attorney's fees from the defendants.

The Court finds the reasoning of Foreman applicable to this case.[4] Plaintiffs contend that they prevailed when the hearing

---

[4] The Foreman court assumed, without deciding, that the plaintiffs could recover attorney's fees because their lawsuit "was a significant 'catalyst' behind the Texas legislature's decision to amend the appointment procedures." Foreman, 193 F.3d at 319. The court noted, however, that the "continuing validity of the [so-called] catalyst theory [was] in serious doubt" after the Supreme Court's decision Farrar v. Hobby, 506 U.S. 103, 109 (1992). Foreman, 193 F.3d at 319. After Foreman was decided, the Supreme Court expressly held that the catalyst theory was no longer good law. Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598 (2001). Therefore, to the extent that Foreman recognized the existence of

-11-

officer ordered Defendant to change E.S.'s pull-ups more often. Plaintiffs have presented no evidence, however, that they ever sought or demanded more frequent changes in their "Request for Special Education Due Process Hearing."  Rather, in their Request for Hearing, Plaintiffs sought various *other* types of relief from the Defendant, namely: (1) "an appropriate evaluation for a learning disability, inclusion and the need for a designated aide and speech" as well as an evaluation "for physical and occupational therapy;" (2) the provision of "appropriate support services such as a designated aide, an incline chair, physical, occupational and speech therapy and a remedial reading program;" (3) the use of non-latex gloves when providing health services for E.S.; and (4) the provision of diapers or pull-ups as a supplementary aid.  (See DEX 1 at 1, 6 at 1.)  Plaintiffs have failed to provide or direct this Court to any evidence showing that they requested more frequent changings as relief in their administrative complaint.[5]

---

the catalyst theory, it has been abrogated.  See Bailey v. Mississippi, 407 F.3d 684, 686 (5th Cir. 2005).  The Foreman case is still good law, however, on the proposition that a plaintiff may not recover attorney's fees "for relief which was never demanded, or even made clear, in the plaintiff's complaint." Foreman, 193 F.3d at 321.

[5] In fact, in the evidence provided by the parties for the summary judgment motion, the only indication is that Plaintiffs complained that Defendant was changing E.S. too *frequently*, even when he didn't need to be changed.  At one pretrial hearing, the hearing officer had the following exchange with Mr. Jonas, attorney for the Plaintiffs:

> THE HEARING OFFICER: Okay.  Mr. Jonas, what is this other issue that —

Plaintiffs point to the fact that they requested a designated aide for E.S. to assist with his toileting needs. Plaintiffs failed, however, to obtain this relief at the administrative level. The hearing officer explicitly found that the Plaintiffs' "proposed relief of a designated aide fails to provide a satisfactory solution," and rejected that relief finding that "the evidence does not support the need for a designated aide." (DEX 2 at 4-5.) In their response to the motion for summary judgment, Plaintiffs attempt to equate their request for a designated aide with a request for more frequent changings, stating that the parents "request[ed] a designated aide so that [E.S.'s] pull-ups could be changed on a more frequent basis." (Resp. to MSJ at 3.) This contention, unsupported with any evidence, is precisely the kind of after-the-fact argument the Fifth Circuit rejected in <u>Foreman</u>. Even if it is true, as Plaintiffs claim, that the *real motivation* behind their demand for a designated aide was to have the pull-ups changed more frequently, that is insufficient without any demand for more frequent changings in the complaint. As the Fifth Circuit stated "hidden motives are not the stuff on which attorney's fees are based." <u>Foreman</u>, 193 F.3d at 321. "A defendant cannot be

---

> <u>MR. CHRISTOPHER JONAS:</u> It's – it's concerning the school district changing the diapers of [E.S.] like up to seven to eight times a day, seven to eight times a day *even when they don't need to be changed.*

(DEX 5 at 8) (emphasis supplied).

asked to pay attorney's fees for relief which was never demanded, or even made clear, in the plaintiff's complaint" id., and the Plaintiffs have not pointed to any evidence that they made such a demand clear in their complaint. Therefore, Plaintiffs have failed to raise a genuine issue as to their claim for attorney's fees.

This result is supported by sound policy. It is unfair to impose attorney's fees against a defendant for "losing" on an issue that the plaintiff did not raise in her complaint because, under such circumstances, the defendant has not had an opportunity to settle or agree to that issue without the need for judicial intervention. Similarly, plaintiffs should not receive windfalls from defendants merely because a hearing officer awarded them something which they did not specifically seek in filing suit. Because Plaintiffs have failed to show that they sought more frequent changings in their complaint, Defendant's motion for summary judgment is GRANTED.

**IV.  CONCLUSION**

For the reasons discussed above, Defendant's Motion for Summary Judgment is GRANTED.

SIGNED and ENTERED this 8th day of January, 2007.

_____
Janis Graham Jack
United States District Judge